## BEN O'FALLIN v. THE STATE.

### No. 3182. Decided June 24, 1914.

### Rehearing denied October 21, 1914.

**1.—Burglary—Affidavit—Newly Discovered Testimony.**

Where newly discovered testimony was made a ground for new trial, but no affidavits were attached to the motion for new trial, the same need not be considered on appeal; besides, the alleged testimony could have been procured if it existed.

**2.—Same—Sufficiency of the Evidence—Circumstantial Evidence.**

Where, upon trial of burglary, the verdict was sustained by circumstantial evidence, and that defendant had in his possession some of the alleged stolen property, the conviction was sustained.

**3.—Same—Exclusive Possession—Recent Possession.**

Where the State relies for a conviction upon recent possession of the stolen property only to connect the defendant with the burglary, that possession must be exclusive; but where the conviction did not rest alone upon such evidence, and the facts and circumstances showed that the defendant was the guilty party to the exclusion of a reasonable doubt, the conviction was sustained.

Appeal from the District Court of Leon. Tried below before the Hon. S. W. Dean.

Appeal from a conviction of burglary; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Jas. T. Ryan,* for appellant.

*C. E. Lane,* Assistant Attorney General, and *E. A. Berry* and *Wm. Watson* and *Joe H. Seale,* for the State.

DAVIDSON, JUDGE.—Appellant was convicted of burglary, his punishment being assessed at two years confinement in the penitentiary.

The motion for new trial alleges as one of its grounds that appellant could prove by his mother that the shirt worn by appellant and identified as taken from the burglarized house had been used by him prior to the commission of the alleged burglary. There is no affidavit of the mother to that fact, nor is it shown that it was newly discovered testimony. It is simply made a ground of the motion for new trial. As thus presented, it does not come within the rule laid down for grant-

ing new trial to secure this character of testimony. He must have known long before the trial the facts set up, and if true could have been shown by his mother.

The remaining ground of the motion alleges the insufficiency of the evidence. There is no direct proof that appellant broke and entered the alleged burglarized house. There is positive evidence of the fact that somebody did and carried away quite a lot of property. Appellant was found in possession of some of the stolen property, which was identified by the alleged owners as being property taken from the burglarized house. Under the circumstances we are of the opinion that the evidence, though circumstantial, is sufficient to justify the verdict of the jury. Appellant was wearing a shirt subsequent to the burglary, which was identified by the parties as having come out of their house. At the place where appellant resided, being his father's residence, there was quite a lot of this stolen property found. The brother and father of the defendant were placed upon the stand and denied having anything to do with the property, or knowledge of its being there. It was secreted in the upper part or what the witnesses called the "loft" of the house. This property was identified as coming from the burglarized house. Flight was shown and appellant arrested on the train leaving the county, and denied his name and identity. These are some of the circumstances of the case. As before stated, although the evidence was circumstantial, we think it fully meets the requirements of the law in cases of this character.

The judgment is affirmed.

*Affirmed.*

ON REHEARING.

October 24, 1914.

DAVIDSON, JUDGE.—The judgment herein was affirmed just before the adjournment of the term last June, and appellant filed a motion for rehearing mainly upon the theory that the testimony is not sufficient to support the conviction. The theory of the motion is that inasmuch as the evidence does not show that the goods taken from the burglarized house found in appellant's father's residence were exclusively in appellant's possession it is not sufficient to show that he was the party who burglarized the house, that is, his connection with the goods was not sufficiently shown. The case was disposed of before upon the theory that it was a case of circumstantial evidence, and that the circumstances were sufficient to show that he was the party who burglarized the house. Appellant asserts a correct proposition of law, and one to which the writer agrees fully, that is, where the State relies for a conviction only upon recent possession of the stolen property to connect him with the burglary, that possession must be an exclusive possession, or possession by himself and others who may have been connected with the burglary. The State's case does not rely or stand upon that theory, as we understand this record. The evidence shows that on Friday night a store-

house of Cozart Brothers was burglarized. It shows without contradiction that this occurred Friday night, and that on Saturday a search warrant was sued out and the residence of appellant's father searched, and the goods found secreted in a loft in the residence. When the parties decided to make the search they secured a search warrant and informed the defendant of the fact that they were going to search the house for the goods taken from the burglarized house, and asked·him for his trunk key, which he gave them. He was then put upon notice that this house would be searched for the stolen goods. He then took the train for Galveston. After investigating the house and finding the goods, the officer at the place where the burglary occurred wired to the constable at the station called Shiro to arrest Ben O'Fallin, giving a description of him. When the train reached Shiro the constable went aboard the train and told him that he was hunting for him. Appellant denied his name and gave another name. The officer insisted that his name was Ben O'Fallin, which he denied. When finally he saw he was to be arrested for the burglary he stated to the officer he was not the man they wanted, but that it was his brother. Appellant's brother was named Earl O'Fallin. Appellant was taken back to the·place of the burglary the next day. The goods found were fully identified as being the goods coming out of the burglarized house. It is unnecessary to go into detail as to how the burglary was committed and incidental matters.

　　When appellant was notified of the intended search of his house, after giving the key to the officers, he went to his brother Earl at a drug store and had a conversation with him, and returned to the train and boarded it. Earl then preceded the officers to the house where the goods were found. Earl O'Fallin testified that he had nothing to do with the burglary or stolen goods and knew nothing about them, and was not aware of the fact they were in the house where found. The father of appellant also testified that Earl O'Fallin did not live at his residence, but was living at the place of Mr. Woodford, with whom he had lived that year and made a crop. The father of appellant further testified that he knew nothing of the goods, or how they got into his house, that they were put in the house without his knowledge or consent. That on the particular night and some nights previous and perhaps subsequently he and his family attended a Methodist·protracted meeting and was away until 10 or 11 o'clock at night. The defendant lived at the house with his father. His father and Ben were the only male persons of any size who were living at the place. About two weeks after this, at the depot one Sunday evening, the Cozart brothers and others were at the depot and discovered that appellant had on a shirt that come out of their house. There was another young man present who also had on a shirt that the Cozart brothers say they had sold him, but that they had not sold the shirt to defendant which he was wearing. They had the shirt examined and identified it as their property, or property that had come out of their house. They further stated they had never sold appellant any shirts. The officer who arrested him at Shiro stated that he read

to him the telegram from the officer at the point of the burglary, and informed appellant that he was an officer. The officer who sent the telegram thus describes it: "After that I turned the goods over to them (meaning Cozart brothers). Then I went over to the depot and sent a telegram to Shiro to the constable, Mr. Mooring, describing Ben O'Fallin, and told him he would be on that train. I told him to arrest him and keep him there; that I had an indictment against him for burglary, and that I would come down on the next train after him. I went down there and got Ben O'Fallin and brought him back." This telegram was read to appellant at the time of his arrest. So when appellant denied his identity and gave the other name, and finally told the constable they wanted his brother, he knew the purpose for which he was being arrested.

Without going further into the details of this transaction, we are of the opinion that the circumstances are sufficient to show that appellant was guilty of the burglary, and his connection with it and possession of the goods and of the shirt especially were sufficient. The rule of exclusive possession of property is not always the criterion; it is sufficient if the facts and circumstances show that appellant was the guilty party to the exclusion of the reasonable doubt. Each case must depend upon its own facts connecting the party with the crime charged. If the State relies only upon the fact of possession, then it must be exclusive and unexplained. He may be convicted as well upon circumstantial evidence where the evidence excludes every reasonable hypothesis except that of guilt, and we are of the opinion that the evidence is sufficient to show that he was the party who entered the house. In fact, if he had been charged with theft of the goods, we are of the opinion this evidence would have sustained the conviction for that offense. So believing, we overrule the motion for rehearing.

*Overruled.*