**Affirmed and Opinion Filed June 10, 2022**



In The
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-21-00196-CR**

**No. 05-21-00197-CR**

**DAVID MONROE SMITHERMAN, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 422nd Judicial District Court**
**Kaufman County, Texas**
**Trial Court Cause Nos. 20-10343-422-F, 20-10344-422-F**

## MEMORANDUM OPINION

Before Justices Schenck, Osborne, and Smith
Opinion by Justice Smith

A jury found appellant David Monroe Smitherman guilty of unlawful restraint of a child less than seventeen years of age and criminal solicitation of a minor. He was sentenced to two years in state jail and fifteen years' confinement in the Texas Department of Corrections, to run currently. In two issues, he challenges the sufficiency of the evidence supporting his unlawful restraint conviction and the sufficiency of the corroborating evidence supporting his criminal solicitation conviction. We affirm the trial court's judgments.

## Background

Appellant worked as a handyman for Jim Harris. Jim lived on property owned by his sister, Kleta Harris, who lived in a separate home on the same property. Appellant spent almost every day on the property doing various projects. Kleta had known appellant for approximately ten years and trusted him to the point that she told her thirteen-year-old granddaughter, Ella,[1] if she needed anything, she could ask appellant.

On May 15, 2020, Ella and her younger cousin wanted to ride a golf cart around the property. Kleta told them to ask Jim's permission. As soon as they neared Jim's house, appellant walked out the front door. They asked appellant if they could ride the golf cart, and he said he needed to jump the battery.

After he hooked the cables, he asked Ella to get in the truck and turn it on. As she sat in the driver's seat, appellant approached the driver's side door. While holding a beer, appellant leaned in the window and asked her a "bunch of questions" that made her uncomfortable. He asked her if she ever touched herself, if she knew about orgasms, and if she wanted him to give her one. She said appellant threatened to blackmail her if she did not let him touch her. He continued to repeat the questions and threaten blackmail about six or seven times. She got out of the truck and left because she did not want her cousin to hear.

---

[1] Ella was the pseudonym used at trial for the complainant.

Once Ella left the truck and walked away, appellant left. Ella and her cousin then went to the RV on the property, which had been converted into a playhouse, to cool off. They hung out together for a little while and then Ella took her cousin back home. Ella returned to the RV alone.

Shortly thereafter, appellant knocked on the door and immediately walked in. Ella was sitting on the couch. Appellant apologized for what he said at the truck and wanted to talk with her. He sat down "pretty close" next to her on the small couch. He touched her thigh and her face and said, "If you want me to stop or you get grossed out, just tell me to stop." He continued to say vulgar things, including that he slept with her mother and performed oral sex on her, which Ella did not believe. She said, "He was like, yeah, I did. And then he laid his hand on my thigh. And I moved it and I told him not to touch me."

After Ella hit his hand away, she stood up and tried to walk away. "He grabbed my arm and told me if I left and went and told on him, he was gonna tell them about the vape and tell them I was lying."

Three days earlier, appellant caught Ella with a vape pen. She was scared that if appellant told her mother or Kleta about vaping, she would get in trouble.

Ella said appellant grabbed her arm enough to stop her and prevent her from leaving. "[H]e grabbed it and kind of pulled me away from the door, and then he let go and was talking to me. And then I just sat down." When asked if she felt like she could leave, she answered, "I knew I could leave but I didn't want to get in

–3–

trouble, so I didn't." But she emphasized that when he grabbed her arm, he simultaneously brought up blackmailing her. Because he threatened to tell on her if she left, she sat back down.

Appellant continued to talk about sex and blackmailing her. Ella stayed in the chair because appellant was standing up. She eventually got mad, stood up, and started screaming at him.

At that time, appellant was standing with one foot down the stair and one foot up on the floor. She was standing between the passenger and driver's seats. She yelled at him to leave and never come around the property again. Appellant told her to "stop acting crazy" and touched her face. She punched him and said she would call the police if he did not leave. Appellant made another vulgar remark, slammed the door, and left.

Ella called 9-1-1 and told the operator about vaping because she thought if she told the operator, "then he [couldn't] tell on me and I couldn't get in trouble." She did not remember the details of the call, but knew she told the operator that she told appellant to get out and he would not leave.

Holly Deatherage lived on the property and had known the family for about ten years. She testified that appellant had been drinking that afternoon. She noticed appellant's truck at Jim's house, and from her perspective, she could see the RV.

Holly heard a female scream from inside the RV, and then the door slammed. She saw appellant walking from the RV. She described the look on his face as

—4—

"blank," and he seemed "kind of intoxicated." She asked him who was in the RV, and he said, "No one." He then got in his truck and left.

Holly ran to the RV, opened the door, and saw Ella on the couch screaming into the phone that "he needs to leave me alone." She was crying and hysterical to the point she could barely talk. Based on what Holly heard and saw, she believed something happened inside the RV. Holly heard Ella tell the 9-1-1 operator that appellant said vulgar things and touched her. Holly said she was going to call Kleta, which upset Ella even more. Holly called Kleta, who arrived within minutes.

When Kleta arrived, she found Ella distraught and excited. Kleta tried to calm Ella down as Ella talked to the 9-1-1 operator. Kleta eventually took the phone from Ella because it was difficult to understand her due to her emotional state. Although Kleta did not see the incident, based on Ella's demeanor, she believed something serious happened inside the RV.

Ella participated in a forensic interview on May 21, 2020. The interviewer described Ella's demeanor as "very matter of fact . . . very articulate . . . and she answered the questions genuinely." The interviewer explained to the jury common techniques that perpetrators use when grooming a child for sexual abuse, which included gaining the family's trust, stretching boundaries with the child, and blackmailing the child to accomplish the abuse.

After hearing the evidence, the jury convicted appellant of unlawful restraint of a child less than seventeen years of age and criminal solicitation of a minor. This appeal followed.

## Unlawful Restraint

Appellant argues the evidence was legally insufficient to prove he restrained Ella. He does not challenge the mens rea of the offense, but instead only whether Ella was "confined." The State responds the evidence was sufficient to support his conviction.

In reviewing a legal sufficiency challenge, we examine the evidence to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We review all the evidence in the light most favorable to the verdict and assume the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences supporting the verdict. *See Rollerson v. State*, 227 S.W.3d 718, 724 (Tex. Crim. App. 2007).

A person commits an offense if he intentionally or knowingly restrains another person. TEX. PENAL CODE ANN. § 20.02(a). Chapter 20 of the Texas Penal Code defines "restrain" to mean "to restrict a person's movements without consent, so as to interfere substantially with the person's liberty, by moving the person from one place to another or by confining the person." *Id*. § 20.01(1); *see Dunn v. State*, No. 02-17-00206-CR, 2018 WL 4022503, at *7 n.9 (Tex. App.—Fort Worth Aug.

–6–

23, 2018, pet. ref'd).  Restraint is "without consent" if it is accomplished by force, intimidation, or deception.  TEX. PENAL CODE ANN. § 20.01(1)(A).  There is no specific time requirement for determining whether a restraint has taken place.  *See Hines v. State*, 75 S.W.3d 444, 447–48 (Tex. Crim. App. 2002); *see also Duffy v. State*, No. 05-19-01247-CR, 2021 WL 4988318, at *4 (Tex. App.—Dallas Oct. 27, 2021, no pet.) (mem. op., not designated for publication).  Because Ella was younger than fourteen years old, she was incapable of giving consent to be restrained.  *See* TEX. PENAL CODE ANN. § 20.01(1)(B)(i); *see also Phifer v. State*, No. 05-14-01411-CR, 2016 WL 772737, at *1 (Tex. App.—Dallas Feb. 29, 2016, no pet.) (mem. op., not designated for publication).

Appellant acknowledges he had two contacts with Ella: one in his truck and the second in the RV.  He argues that he never restrained Ella, and he did nothing to prevent her from exiting either vehicle.  We disagree.

The evidence shows that appellant entered the RV without being invited and sat close to Ella.  He touched her face and her mid-thigh after previously discussing sex with her.  She hit appellant's hand away, stood up, and tried to walk away.

She testified, "He grabbed my arm and told me if I left and went and told on him, he was gonna tell them about the vape and tell them I was lying."  Appellant grabbed her arm enough to stop her and prevent her from leaving.

When asked if she felt like she could leave, she answered, "I knew I could leave but I didn't want to get in trouble, so I didn't."  To the extent appellant relies

on this testimony to indicate he did not restrain Ella, we reject his argument. A reasonable jury could determine that by grabbing Ella's arm while indicating he would blackmail her by exposing her vaping, appellant intimidated her into staying. *See* TEX. PENAL CODE ANN. § 21.01(1)(B)(i) (restraint is without consent if accomplished by intimidation); *see also Immicke v. State*, No. 10-11-00453-CR, 2013 WL1188786, at *1 (Tex. App.—Waco Mar. 21, 2013, no pet.) (mem. op., not designated for publication) (relying on Encarta Dictionary, which defines "intimidate" as "to frighten somebody into doing or not doing something"). Ella testified that appellant continued talking about sex and blackmailing her. She stayed in the chair because appellant was standing up. A reasonable jury could find that such behavior frightened her into staying inside the RV.

Further, because there is no specific time period for determining whether a restraint occurred, the jury could reasonably consider appellant's earlier behavior with Ella at the truck as intimidation that carried over to their later interaction in the RV. Thus, we conclude that the evidence, when viewed in the light most favorable to the verdict, is sufficient for a reasonable jury to conclude the surrounding circumstances substantially interfered with Ella's liberty thereby resulting in an unlawful restraint. *See* TEX. PENAL CODE ANN. § 21.01(1)(B)(i); *see also Hines v. State*, 75 S.W.3d 444, 447–48 (Tex. Crim. App. 2002) ("It is up to the jury to distinguish between those situations in which a substantial interference with the

victim's liberty has taken place and those situations in which a slight interference has taken place."). Appellant's first issue is overruled.

## Criminal Solicitation

Appellant argues in his second issue that the evidence is legally insufficient to support his conviction for criminal solicitation of a minor. The State indicted appellant for criminal solicitation with intent to commit aggravated sexual assault by causing the penetration of Ella's sexual organ by his sexual organ or by causing Ella's sexual organ to contact appellant's mouth. The State responds that the evidence is sufficient to support his conviction.

The offense of criminal solicitation of a minor occurs when a person, with the intent that sexual assault or sexual performance be committed, requests, commands, or attempts to induce a minor to engage in specific conduct, that under the circumstances surrounding the actor's conduct as the actor believes them to be, would make the minor a party to the commission of sexual assault or sexual performance. *See* TEX. PENAL CODE ANN. § 15.031; *see also Ashcraft v. State*, No. 03-06-00310-CR, 2008 WL 2938733, at *8 (Tex. App.—Austin July 31, 2008, no pet.) (mem. op., not designated for publication). No completed act of sexual contact is required to be proved; the prohibited conduct is the solicitation. *See Minze v. State*, No. 10-18-00333-CR, 2020 WL 5241211, at *4 (Tex. App.—Waco Aug. 31, 2020, pet. ref'd) (mem. op., not designated for publication). However, a person may not be convicted of criminal solicitation of a minor on the uncorroborated testimony

of the minor allegedly solicited "unless the solicitation is made under circumstances strongly corroborative of both the solicitation itself and the actor's intent that the minor act on the solicitation." *See* TEX. PENAL CODE ANN. § 15.031(c).

The corroboration required under the criminal solicitation statute is analogous to the corroboration requirement found in the accomplice-witness statute. *Lumsden v. State*, 564 S.W.3d 858, 875 (Tex. App.—Fort Worth 2018, pet. ref'd) (citing TEX. CODE CRIM. PROC. ANN. art. 38.14). Due to the similarities between these two statutes, the test for evaluating the sufficiency of the corroboration evidence is the same under each. *Id.* In assessing the sufficiency of the evidence corroborating the victim's testimony, the test requires that we eliminate the minor victim's testimony from consideration and then determine whether there is other incriminating evidence tending to connect the accused with the crime. *Id.* This standard presents a low hurdle for the State because the evidence need not directly link the accused with the crime or be sufficient to establish guilt. *Id.*

Appellant argues that after eliminating Ella's testimony, there is no evidence tending to connect him to the offense. He claims the only evidence before the jury was his presence at the scene and Ella's emotional state, neither of which is sufficient. *See, e.g.*, *Sheffield v. State*, 847 S.W.2d 251, 259 (Tex. App.—Tyler 1992, pet. ref'd) (mere showing that accused and minor were together shortly before or after commission of offense may not be sufficient corroboration). Eliminating Ella's testimony from consideration, we conclude that the State presented other

–10–

evidence tending to connect appellant with the offense of solicitation of a minor thereby meeting its "low hurdle" for conviction.

The record shows that Holly heard a female scream from inside the RV, and then the door slammed. She saw appellant walking from the RV with a "blank" face, and he seemed "kind of intoxicated." She asked him who was in the RV, and he said, "No one." He then left in his truck.

Holly ran to the RV, opened the door, and saw Ella on the couch screaming into the phone that "he needs to leave me alone." She was crying and hysterical to the point she could barely talk. Based on what Holly heard and saw, she believed something happened inside the RV. Holly heard Ella tell the 9-1-1 operator that appellant said vulgar things and touched her. Holly did not see anyone else enter or leave the RV other than appellant.

Kleta testified that when she arrived at the RV, Ella was emotional to the point of almost hyperventilating. Kleta had never seen her so upset. Although Kleta did not see the incident, based on Ella's demeanor, she believed something serious happened.

When Ella called 9-1-1, she almost immediately admitted vaping, which corroborated her trial testimony that appellant attempted to blackmail her when she refused his sexual advances. Further, the forensic interviewer explained grooming behaviors in perpetrators. Blackmail is a common technique. She explained that if a child did not comply with a perpetrator's demands, then a perpetrator often

–11–

changed tactics, acted more harshly, and resorted to threats to get what he wanted from the victim.

The forensic interviewer explained another important part of grooming was gaining a family's trust. Once a perpetrator gained trust, then the family was less likely to question a perpetrator's access to the child. Here, the jury heard testimony that appellant had known the family for about a decade and spent almost every day working on the property, and therefore, had access to Ella. Kleta trusted appellant to the point that she told Ella if she needed anything, she could ask him.

The jury was free to believe the witnesses' testimony and permitted to draw reasonable inferences from the evidence. We must defer to the jury as the finder of fact. *See Threadgill v. State*, 146 S.W.3d 654, 663 (Tex. Crim. App. 2004). After eliminating Ella's testimony and viewing the remaining evidence in the light most favorable to the verdict, we conclude the State presented sufficiently corroborated evidence tending to link appellant with the crime of solicitation. We overrule appellant's second issue.

## Conclusion

Having considered and overruled appellant's arguments, we affirm the trial court's judgments.

/Craig Smith/
CRAIG SMITH
JUSTICE

210196f.u05
210197f.u05
Do Not Publish
TEX. R. APP. P. 47.2(b)



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

DAVID MONROE SMITHERMAN, Appellant

No. 05-21-00196-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the 422nd Judicial District Court, Kaufman County, Texas

Trial Court Cause No. 20-10343-422-F.

Opinion delivered by Justice Smith. Justices Schenck and Osborne participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 10th day of June, 2022.



## Court of Appeals
## Fifth District of Texas at Dallas
### JUDGMENT

DAVID MONROE SMITHERMAN,
Appellant

No. 05-21-00197-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 422nd Judicial
District Court, Kaufman County,
Texas
Trial Court Cause No. 20-10344-422-F.
Opinion delivered by Justice Smith.
Justices Schenck and Osborne
participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 10th day of June, 2022.