# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00675-CR

**Steven R. Mueller, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE COUNTY COURT AT LAW NO. 3 OF TRAVIS COUNTY
## NO. C-1-CR-07-212229, HONORABLE DAVID CRAIN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

The trial court convicted Steven R. Mueller of the offense of assault with bodily injury. *See* Tex. Penal Code Ann. § 22.01(a)(1) (West Supp. 2007). Punishment was assessed at 150 days in the Travis County Jail. In a single point of error, Mueller challenges the legal and factual sufficiency of the evidence. We will affirm the judgment.

## BACKGROUND

The trial court heard evidence that on June 21, 2007, Mueller entered a grocery store, grabbed a grocery bag, placed some items in the bag, and exited the store without paying for the items. Daniel Hislop, a loss prevention officer for the grocery store, testified that he and Greg Stewart, another such officer, "confronted [Mueller], told him who we were, [and] asked him to come back inside." According to Hislop, Mueller initially cooperated. The three went upstairs to the break room by the store manager's office and started filling out paperwork.

Per the manager's instructions, Hislop went downstairs to call the police because, according to Hislop, Mueller "had been in the store before trying to steal and he had been asked not to come [back]." When Hislop returned to the break room, Mueller was "standing up putting all his belongings into his pockets." Hislop "told him to sit down, which he did, then he yelled this is an F-ing waste of time and came toward[] me. I put my phone in my pocket and told him to sit back down." Mueller did not, however, sit back down. Instead, according to Hislop, the following occurred:

> Then he came toward[] me. I pointed for him to sit back down and he struck me in my chest with his left hand and scratched me under my left eye with his right hand. So I wrapped him up, threw him on the ground, told him to calm down. He said he was, so we put him back in his chair[,] and had the assistant store director, Mario Montivias, call 911.

Hislop provided the following additional testimony about the incident:

Q: When he hit you on the chest, was that intentional?

A: I think he was trying to push me down so he could get out.

Q: Did that cause you pain?

A: A little bit.

Q: How about when you were struck in the face?

A: I had a pretty good little red gash up under my eye that I had to seek medical treatment for.

Q: How did he hit you when you were struck on the face?

A: His hand came up and under my eye like that.

2

Q:      Was that a quick movement, was it deliberate?

A:      Yeah.  Because he came, he had his first hand out like this and then he went up like that.

On cross-examination, Hislop added that Mueller "put his whole arm into my chest."  On redirect, Hislop further testified, "My eye, it was all red and a little swollen.  I mean, because that scratch came maybe about a half to 1 inch below my eye."

The only other witness to testify during trial was Mueller.  Mueller denied assaulting Hislop or putting his hands on him in any way.  According to Mueller, it was Hislop and Stewart who were "coming at" him, and if Mueller raised his hand, "it was just in a defensive gesture." Mueller testified, "I might have threw up my hands, but no . . . I did not just get up and shove anybody."  Mueller further testified that he did not intend to cause Hislop any physical pain.  Mueller was also asked, "This thing about you putting up your arm and trying to come toward him so that you can leave, did you do that?"  Mueller answered,

> If it did occur, it happened so fast the—if my arms did become raised, it was totally as a reaction to being tackled by them.  And no, I have no recollection at all of consciously putting my hands up.  If it happened, it was totally out of reaction.  And that's exactly what I told them at the time.  That's what I said all along.  That was the only way my hands came up.

A videotape of the incident was admitted into evidence for the trial court's consideration.  However, after the close of evidence, the trial court stated, on the record,

> I didn't find [the videotape] enormously helpful because they fall off the screen or maybe the assault occurred off the screen.  It would appear to me that instead of just a regular video . . . where you see everything, it looks like a picture is taken out every half a second or something like that.  You don't see the whole continuous movement. . . . [I]t looked kind of choppy like that to me.  I'm relying more on the

testimony. And based on the testimony and who I found the most credible, I find the defendant guilty as charged.

The trial court then assessed punishment at 150 days in the Travis County Jail. This appeal followed.

## STANDARD OF REVIEW

When there is a challenge to the legal sufficiency of the evidence to sustain a criminal conviction, we consider whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Vodochodsky v. State*, 158 S.W.3d 502, 509 (Tex. Crim. App. 2005). We review all the evidence in the light most favorable to the verdict and assume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *See Rollerson v. State*, 227 S.W.3d 718, 724 (Tex. Crim. App. 2007); *Shams v. State*, 195 S.W.3d 346, 347 (Tex. App.—Austin 2006, pet. ref'd) (citing *Griffin v. State*, 614 S.W.2d 155, 159 (Tex. Crim. App. 1981)). It is not necessary that every fact point directly and independently to the defendant's guilt, but it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

In a factual sufficiency review, we view the evidence in a neutral light and ask whether a trier of fact was rationally justified in finding guilt beyond a reasonable doubt. *See Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); *see also Wooley v. State*, ___ S.W.3d ___, 2008 Tex. Crim. App. LEXIS 762, at *21 (Tex. Crim. App. 2008) (holding that factual sufficiency, like legal sufficiency, should be measured "by the elements of the offense as defined by a hypothetically correct jury charge"). We then determine whether the evidence supporting the

4

verdict is so weak that the verdict is clearly wrong and manifestly unjust or whether the verdict is against the great weight and preponderance of the conflicting evidence. *Id*. at 415. "The verdict may be set aside only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Grotti v. State*, ____ S.W.3d ___, 2008 Tex. Crim. App. LEXIS 761, at *13 (Tex. Crim. App. 2008) (citing *Watson*, 204 S.W.3d at 414-17). We will not reverse a case on a factual sufficiency challenge unless we can say, with some objective basis in the record, that the great weight and preponderance of the evidence contradicts the verdict. *Watson*, 204 S.W.3d at 417.

## ANALYSIS

In his sole point of error, Mueller asserts that the evidence is insufficient to sustain his conviction. He claims that "[t]he intent of [Mueller] was to leave [the room] and no actions of [Mueller] can show there was sufficient evidence" that he "intended to cause harm" to Hislop.

A person commits the offense of assault with bodily injury if he intentionally, knowingly, or recklessly causes bodily injury to another. *See* Tex. Penal Code Ann. § 22.01(a)(1). "Bodily injury" means physical pain, illness, or any impairment of physical condition. *Id*. § 1.07(a)(8) (West Supp. 2007).

Hislop testified that Mueller "came toward" him, "put his whole arm into" Hislop's chest, and scratched Hislop's face, "maybe about a half to 1 inch below" Hislop's eye. Hislop also testified that Mueller's actions were deliberate, "[b]ecause he came, he had his first hand out like this and then he went up like that." Hislop further testified that Mueller caused him physical pain and gave him "a pretty good little red gash up under my eye that I had to seek medical treatment for."

5

Viewing this evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could find, beyond a reasonable doubt, that Mueller intentionally, knowingly, or recklessly caused Hislop bodily injury. Thus, the evidence is legally sufficient to support Mueller's conviction.

When considering the evidence in a neutral light, we also conclude that the evidence is factually sufficient to support Mueller's conviction. Mueller denied assaulting Hislop. He testified that he was just trying to leave the room, and that, if he did somehow strike Hislop with his arm, it was as "a defensive gesture" in response to Hislop and Stewart "coming at" him. Mueller also testified that he did not intend to cause Hislop any physical pain. However, the trial court, as finder of fact, was entitled to disbelieve Mueller's account of what transpired and find Hislop's description of the incident more credible. We cannot say, with some objective basis in the record, that the great weight and preponderance of the evidence contradicts the trial court's verdict.

We overrule Mueller's sole point of error.

## CONCLUSION

We affirm the judgment of the trial court.

_____

Bob Pemberton, Justice

Before Chief Justice Law, Justices Pemberton and Waldrop

Affirmed

Filed: August 14, 2008

Do Not Publish

6