# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00722-CV

## In the Mater of G. V.

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT
### NO. J-28,570, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

The district court, sitting as a juvenile court, adjudicated G.V. delinquent after finding that he committed the offense of failure to identify. *See* Tex. Penal Code Ann. § 38.02(b) (West Supp. 2007). The juvenile court assessed punishment at six months' probation. In a single issue on appeal, G.V. challenges the legal and factual sufficiency of the evidence. We will affirm the judgment.

## BACKGROUND

The juvenile court heard evidence that on July 22, 2007, at approximately 4:00 or 5:00 in the afternoon, Officer Rory Sullivan and other officers of the Austin Police Department were dispatched to an apartment complex at 2104 East Anderson Lane to investigate a disturbance. When asked to describe the nature of the call that brought him to this location, Sullivan testified,

> There [were] a couple of calls that came out but basically it was a disturbance. A group of individuals that had been involved in a disturbance on a prior date had arrived at the complex and they were there on the scene, and I can't remember—I think there was something about a gun being involved and somebody's car getting damaged on a previous incident, and then the group was at the apartment complex when we were dispatched.

When asked to describe the prior disturbance that was mentioned in the dispatch, Sullivan explained,

> There was a fight that happened. I don't remember if it was the day before or the week before or what. The other officers on scene were familiar with it and it was a fight. Somebody's car was damaged, criminal mischief, and then like a second call came out as we were going out there, something involving a gun. I don't know if that was—a gun was involved on the prior call. We didn't know—something came out about a gun, I remember, and so—but we never found, you know, any guns or anything on the suspect.

Officer Sullivan testified that, when the officers arrived at the apartment complex, they received an updated call from dispatch indicating that the group was at the pool area. Accordingly, the officers proceeded to the gated pool area, where they observed "a group of juveniles at the pool." According to Sullivan, there were "about 10 to 15 juveniles" inside the pool area, "mostly males," but also "a few females." Sullivan recounted, "Some were swimming, some were just hanging out on bench chairs." When asked if these were the same individuals whom the caller[1] identified as having been involved in the prior disturbance, Sullivan testified, "Yes." The officers determined that none of the individuals lived at the apartment complex.

Sullivan also noticed "an aluminum baseball bat laying on the pool area." Sullivan testified that the bat was "beside" an individual later identified as G.V. Sullivan explained, "I walked up and he moved the bat to his—he reached down. I don't know if he moved it. He reached down to the bat and then came back up, and I asked whose bat is that, and he admitted, he said, that's my bat." Sullivan testified, "I asked him about the bat and he said he just got done

_____

[1] There is no indication in the record as to the identity of the person who reported the disturbance.

2

playing baseball." This explanation "didn't make sense" to Sullivan, because G.V. "didn't have any baseball gloves, he didn't have a baseball itself." Sullivan also testified that he did not see a baseball or a baseball glove on any other individual in the pool area.

At this point, Officer Sullivan asked G.V. to identify himself. Sullivan testified that G.V. gave him an informal version of his name and a date of birth. The date of birth G.V. gave Sullivan was August 3, 1989. Sullivan, however, "was not able to find his name under the name and date of birth that he had given me." Sullivan testified, "I couldn't find out who he was so I arrested him for having the baseball bat,[2] and on the way to the jail I was still trying to . . . identify him." On the way to the jail, Sullivan was able to positively identify G.V. It turned out that G.V.'s actual date of birth was August 3, 1990.[3]

In the State's original petition alleging delinquent conduct, the State charged G.V. with intentionally giving a false name and a false date of birth to a police officer while the officer was lawfully detaining G.V. The juvenile court found that G.V. was lawfully detained. The juvenile court's reasoning was as follows:

> I think the police have a duty to investigate, and if the dispatch said this group of kids is back over here, they were here sometime earlier, it wasn't precise but it was information that I think the police have a duty to investigate, to try to prevent another incident of assault or damage that occurred at the same place. So he goes to investigate, he sees a group of kids, some of them supposedly or at least were dispatched as having been there before, and he sees a baseball bat which by itself is not an illegal weapon but we all know can be used to damage property or people. So I think he had a right to lawfully detain and question the Respondent.

---

[2] On cross-examination, Officer Sullivan testified that the baseball bat was also the reason he initially detained G.V.

[3] In other words, G.V. represented to Officer Sullivan that he was almost eighteen when, in fact, he was not yet seventeen.

The juvenile court also found that "there was confusion about [G.V.'s] name," but that there was no confusion about G.V. giving a specific and inaccurate date of birth. Thus, the juvenile court found not true the paragraph alleging that G.V. intentionally gave a false name, but found true the paragraph alleging that G.V. intentionally gave a false date of birth. The juvenile court proceeded to disposition, after which it assessed punishment at six months' probation. This appeal followed.

## STANDARD OF REVIEW

Adjudications of delinquency in juvenile cases are based on the criminal standard of proof. *See* Tex. Fam. Code Ann. § 54.03(f) (West Supp. 2007). Therefore, we review adjudications of delinquency in juvenile cases by applying the same standards applicable to sufficiency of the evidence challenges in criminal cases. *In re M.C.L.*, 110 S.W.3d 591, 594 (Tex. App.—Austin 2003, no pet.).

When there is a challenge to the legal sufficiency of the evidence to sustain a criminal conviction, we consider whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Vodochodsky v. State*, 158 S.W.3d 502, 509 (Tex. Crim. App. 2005). We review all the evidence in the light most favorable to the verdict and assume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *See Rollerson v. State*, 227 S.W.3d 718, 724 (Tex. Crim. App. 2007); *Shams v. State*, 195 S.W.3d 346, 347 (Tex. App.—Austin 2006, pet. ref'd) (citing *Griffin v. State*, 614 S.W.2d 155, 159 (Tex. Crim. App. 1981)). It is not necessary that every fact point directly and independently to the

defendant's guilt, but it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). We must consider all the evidence, rightly or wrongly admitted, that the trier of fact was permitted to consider. *See Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001).

In a factual sufficiency review, we view the evidence in a neutral light and ask whether the trier of fact was rationally justified in finding guilt beyond a reasonable doubt. *See Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); *see also Wooley v. State*, No. PD-0861-07, 2008 Tex. Crim. App. LEXIS 762, at *21 (Tex. Crim. App. June 25, 2008) (holding that factual sufficiency, like legal sufficiency, should be measured "by the elements of the offense as defined by a hypothetically correct jury charge"). We then determine whether the evidence supporting the verdict is so weak that the verdict is clearly wrong and manifestly unjust or whether the verdict is against the great weight and preponderance of the conflicting evidence. *Watson*, 204 S.W.3d at 415. "The verdict may be set aside only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Grotti v. State*, No. PD-134-07, 2008 Tex. Crim. App. LEXIS 761, at *13 (Tex. Crim. App. June 25, 2008) (citing *Watson*, 204 S.W.3d at 414-17). In other words, we will not reverse a case on a factual sufficiency challenge unless we can say, with some objective basis in the record, that the great weight and preponderance of the evidence contradicts the verdict. *See Watson*, 204 S.W.3d at 417.

5

## ANALYSIS

A person commits the offense of failure to identify if he intentionally gives a false or fictitious name, residence address, or date of birth to a peace officer who has lawfully arrested or detained him. *See* Tex. Penal Code Ann. § 38.02(b). G.V. does not dispute the sufficiency of the evidence supporting the district court's finding that he provided a false date of birth. Instead, G.V. asserts that the evidence is insufficient to prove that he was lawfully arrested or detained at the time he gave Officer Sullivan a false date of birth. G.V. claims that Sullivan did not have reasonable suspicion to detain him for anything other than "possession of a baseball bat," which, according to G.V., was not unlawful under the circumstances. The State responds that Sullivan had enough specific, articulable facts available to him from which he could reasonably suspect that G.V. had been or soon would be engaged in criminal activity.

A police officer may lawfully conduct a temporary detention if there is reasonable suspicion to believe that the detained person is violating the law. *Neal v. State*, 256 S.W.3d 264, 2008 Tex. Crim. App. LEXIS 754, at *29 (Tex. Crim. App. June 18, 2008); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity. *Neal*, 2008 Tex. Crim. App. LEXIS, at *29-30. "This is an objective standard that disregards any subjective intent of the officer making the stop and looks solely to whether an objective basis for the stop exists." *Ford*, 158 S.W.3d at 492. In making this determination, we consider the totality of the circumstances. *Neal*, 2008 Tex. Crim. App. LEXIS, at *30.

6

Although Officer Sullivan testified that the reason he initially detained G.V. was because of his possession of the baseball bat, the record reflects additional circumstances that led him to believe that G.V. was, or soon would be, engaged in criminal activity. First, Sullivan and other officers received calls from dispatch about a "group of individuals" who were creating a disturbance at an apartment complex. These individuals, according to the dispatch, had been involved in a prior disturbance that Sullivan characterized as "a fight." This fight involved "criminal mischief" resulting in "somebody's car [getting] damaged." The dispatch also indicated that a gun was possibly involved in the current disturbance.

Second, once Officer Sullivan arrived at the scene, he observed a group of individuals at the pool area. The pool area was the same location where the dispatch had specifically indicated the group of individuals could be found. Sullivan also testified that the officers determined that none of the individuals in the pool area lived at the apartment complex, and that these were the individuals who the caller had identified as being involved in the prior disturbance.

Third, Officer Sullivan observed an aluminum baseball bat on the ground "beside" G.V. Sullivan testified that, when he walked up to G.V., G.V. "reached down to the bat and then came back up." G.V. admitted that the bat belonged to him. When Sullivan asked G.V. about the bat, G.V. explained that he had been playing baseball. This explanation "didn't make sense" to Sullivan, because there were no other baseball items, such as a ball or a glove, either on or around G.V. or any of the other individuals in the pool area.

Viewing the above evidence in the light most favorable to the finding, we conclude that a rational trier of fact could find beyond a reasonable doubt that Officer Sullivan had specific,

articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that G.V. actually is, has been, or soon will be engaged in criminal activity. To summarize, Sullivan had received information about a disturbance at the same location where a prior disturbance had been reported. This prior disturbance involved the same group of individuals who were involved in the current disturbance, a "fight," and "criminal mischief" that resulted in "somebody's car [getting] damaged." A gun was reportedly involved in the current disturbance. Although no gun was found, a rational trier of fact could infer that an aluminum baseball bat could be used to inflict damage to either persons or property. Thus, G.V.'s possession of the bat, although by itself not necessarily a criminal act, could be evidence of criminal activity when considered together with the other circumstances in this particular case. This is especially true when considering the evidence showing that G.V. possessed the bat in a swimming pool area, and that there were no baseballs or gloves found on or around G.V. or anyone else in the pool area. We conclude that the evidence was legally sufficient to support the juvenile court's finding.

When considering the evidence in a neutral light, we similarly conclude that the evidence is factually sufficient. G.V. provided no contrary evidence refuting Officer Sullivan's testimony, so we cannot say, with some objective basis in the record, that the great weight and preponderance of the evidence contradicts the juvenile court's finding.

We overrule G.V.'s sole issue on appeal.

## CONCLUSION

We affirm the judgment of the juvenile court.

_____

Bob Pemberton, Justice

Before Chief Justice Law, Justices Puryear and Pemberton

Affirmed

Filed:   August 22, 2008