

**In The**
**Court of Appeals**
**Sixth Appellate District of Texas at Texarkana**

_____

No. 06-08-00003-CR

_____

DOUGLAS SCOTT ACREE, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 241st Judicial District Court
Smith County, Texas
Trial Court No. 241-144-07

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM OPINION

Douglas Scott Acree was convicted by a jury of aggravated sexual assault of a child under fourteen and, after pleading true to a prior felony conviction, assessed sixty years' imprisonment and a $10,000.00 fine. At trial, the child, S.O., recanted her prior recorded statements and testified that Acree did not improperly touch her. Acree appeals alleging legal and factual insufficiency of the evidence, an improper commitment question was asked of the jury panel, and an expert witness was allowed to bolster the testimony of S.O. After a review of the evidence, we affirm the judgment of the trial court.

## I.     The Evidence

Detective Paul Robeson, an investigator for the Tyler Police Department, testified that, on April 16, 2007, a report was received that S.O. had made an outcry of a sexual assault by Acree, who was her grandmother's boyfriend. It was reported that the offense occurred when S.O. was in the custody of her grandmother, Arlena Webb. According to Robeson, Webb was "for the defendant." While Acree was incarcerated before trial, Webb visited him thirty-nine times.

Courtney Blasingame, a licensed master social worker trained to do forensic interviews, conducted an interview of S.O. April 18, 2007. The video and audio recording of this interview was played to the jury.[1] On the video recording, S.O. stated Acree, using his hand, touched her "private"

---

[1]The recording was admitted into evidence because the statements recorded were inconsistent with statements testified to by S.O. in court. The admissibility of this statement is not an issue on appeal.

four times.  She described the first occurrence when her grandmother was gone and Acree was babysitting her.  On a drawing of a child, S.O. marked that he touched her genital area.  She further stated that at least one of the touchings was under her underclothes and inside her private part.

Susan Hinson, a registered nurse who is also certified as a pediatric sexual assault nurse, conducted a sexual assault examination of S.O. May 14, 2007.  While her history was being taken, S.O. stated to Hinson that Acree used his hand and "touched me where I wasn't supposed to be, on my private."  After doing a complete examination of S.O., Hinson found S.O. had a white linear scar approximately 0.8 centimeters in the perianal area.  Hinson testified such a scar was consistent with what S.O. told her happened.

Dr. Gayle Burress, a family therapist and forensic specialist, who has practiced for twenty-five years in Smith County, testified about her review of the case and interviews with S.O.  According to Burress, S.O.'s testimony in court was a polar opposite of her previous statements on the video, outcry, and history given to the sexual assault nurse.  Burress further explained it is not unusual for child victims of sexual assault to recant their testimony because of embarrassment, emotional discomfort, or they have been made to feel guilty or frightened.  Burress stated that, in her interviews with S.O., she stated Acree had touched her on her private under her clothes. Burress testified she had been told S.O. had acted out sexually with a cousin and that such behavior had to be taught her by someone.  S.O. told Burress that "Doug taught me."  Burress testified that S.O.'s outcry was not suspect even though it occurred shortly after she was discovered acting out sexually

3

with her cousins, since S.O. was so young and unsophisticated at the time. On cross-examination, Burress acknowledged that S.O. was "jumping back and forth and saying 'Yes, it did happen; no it didn't happen.'"

## II.     Legal and Factual Sufficiency

When addressing legal sufficiency complaints, we apply well-known standards: we consider the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact-finder could have found the essential elements of the crime beyond a reasonable doubt. *Rollerson v. State*, 227 S.W.3d 718, 724 (Tex. Crim. App. 2007); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). The jury, as sole judge of the witnesses' credibility and the weight to be given their testimony, is free to accept or reject any or all of the evidence presented by either side. *See Margraves v. State*, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000). We must give deference to "the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper*, 214 S.W.3d at 13 (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)).

Evidence that rationally supports a guilty verdict beyond a reasonable doubt under the legal sufficiency standard can still be factually insufficient. *Marshall v. State*, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006), *cert. denied*, ___ U.S. ___, 128 S. Ct. 87 (2007). Evidence is factually insufficient to support the verdict if it is clearly wrong or manifestly unjust or against the great

4

weight and preponderance of the evidence. *Id.* at 625. The difference between the legal and factual sufficiency standards is that "the former requires the reviewing court to defer to the jury's credibility and weight determinations while the latter permits the reviewing court to substitute its judgment for the jury's on these questions 'albeit to a very limited degree.'" *Rollerson*, 227 S.W.3d at 724 (quoting *Watson v. State*, 204 S.W.3d 404, 416–17 (Tex. Crim. App. 2006); *Marshall*, 210 S.W.3d at 625. However, a "factual-sufficiency review is 'barely distinguishable' from a *Jackson v. Virginia* legal sufficiency review." *Rollerson*, 227 S.W.3d at 724 (quoting *Watson*, 204 S.W.3d at 415).

Acree argues the State did not prove all elements of the offense of aggravated sexual assault because the State failed to prove penetration of the child's sexual organ by Acree's hand and finger as alleged in the indictment. We find evidence in the record to support this finding. S.O.'s videotaped testimony stated that Acree touched her with his hand under her clothes and "inside" her private. She illustrated this touching on a drawing of a child's body by marking the genital area as the place where she was touched. Hinson, the nurse, testified that S.O. told her, "[Acree] touched me where I wasn't supposed to be, on my private" and pointed to her front genitalia. The physical examination revealed that S.O. had a white linear scar approximately 0.8 centimeters in the perianal area. This scar was consistent with S.O.'s explanation of the history of sexual abuse. The evidence showed that S.O. had also given this information to Burress. This evidence is legally sufficient to support the jury's verdict of conviction.[2]

_____

[2]Acree also complains that the State did not prove S.O., a four-year-old child at the time of the offense, was not the spouse of Acree. Since four-year-old children are unable to marry, proof

In support of his argument that the evidence is not factually sufficient, Acree points out that S.O. changed her testimony and at trial denied that Acree assaulted her; that she testified she only made such allegation because she was afraid she would get in trouble with those questioning her; that no physical evidence connected Acree to the crime; that she only reported this attack after she was about to get into trouble for her own conduct; and that she was coached or pressured to implicate Acree.

Undoubtedly, S.O. testified differently at trial than she had in her previous statements. This major difference was clearly brought to the attention of the jury, which is charged with resolving conflicts in testimony. One function of a jury is to determine the credibility of the witnesses and decide if it believes all, none, or any part of any witness' testimony. After reviewing all evidence, the jury is entitled to even disbelieve a recantation. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). Here, the jury chose to believe S.O.'s original statements, together with corroborating evidence, rather than the testimony presented at trial; the recantation does not destroy the probative value of the prior statements. *Id.* So, while the recantation evidence is probative and in some instances may persuade a jury that a reasonable doubt as to guilt exists, on this occasion the jury apparently believed that the child's original testimony was accurate.

S.O. testified at trial that she made the allegations against Acree because she was afraid she would get in trouble. The genesis for this argument apparently is the sexual acting that S.O. was

---

of this fact does not seem to be necessary, but if so, Robeson testified that S.O. was not the spouse of the defendant.

involved in with two male cousins. While this scenario is not fully developed in the record, it appears that two male cousins had dropped their pants in view of S.O. and said they were going to have sex with her. It was after this incident in April 2007 that S.O. made an outcry against Acree regarding this incident. Once again, this evidence was fully disclosed to the jury, who could consider it as impeachment evidence. The State presented evidence to explain such actions by a young child. We find this is another example of the jury's function of determining which evidence is credible and persuasive.

Acree argues that S.O. was coached or pressured to testify against Acree. The argument of coaching is that, during the interview with Blasingame, S.O. used the word "inappropriate," which she could have only known by adult coaching. While that word may not usually be a part of the vocabulary of a six-year-old child, we cannot conclude the use of the word "inappropriate" alone indicates the child was coached or induced to make an incriminating statement against Acree. Further, we find nothing in the record to support an allegation that those questioning S.O. wanted her to implicate Acree so that "she would not get into trouble."

Based on the evidence in this record, we do not conclude that the verdict of the jury is clearly wrong or manifestly unjust or against the great weight and preponderance of the evidence. We overrule the evidence sufficiency points of error.

### III.   Commitment Question

During the voir dire examination, the State asked the panel:

> Is there anybody who says, even if I believe beyond a reasonable doubt that all of the elements that were contained in the indictment were proven, but if you don't have that DNA evidence, I'm not going to be able to return a conviction in this case?

Acree argues this was an improper commitment question.

A commitment question is a question that "commits a prospective juror to resolve, or to refrain from resolving, an issue a certain way after learning a particular fact." *Standefer v. State*, 59 S.W.3d 177, 179 (Tex. Crim. App. 2001). Not all commitment questions are improper; when the law requires a certain type commitment from jurors, attorneys may ask prospective jurors whether they can follow the law in that regard. *Id.* at 182. For a commitment question to be proper, one of the possible answers to that question must give rise to a valid challenge for cause. *Id.*

Here, it is not disputed that the question was a commitment question; the issue is whether one of the possible answers to the question would give rise to a valid challenge for cause.

The question asked the jurors that, if they believed and found that all elements of this offense had been proved beyond a reasonable doubt, would they still require DNA evidence to render a conviction. The wording of the question asked the jurors to presuppose that, after hearing all the evidence, each juror had concluded the State had met its burden of proof as to all elements of the offense. The question was whether the juror, even after determining all elements had been proved,

would require more or additional evidence, specifically DNA reports. We find no error in allowing this question.

The State may properly challenge a prospective juror for cause when the juror would hold the State to a higher standard than beyond a reasonable doubt. *Coleman v. State*, 881 S.W.2d 344, 360 (Tex. Crim. App. 1994). While it is true that a juror may set his or her threshold for determining the requirement for attaining the "beyond a reasonable doubt" standard higher than the legal minimum, a juror may be challenged if he or she would require a higher standard than "beyond a reasonable doubt." *Id.* Here, the question plainly asked if the jurors would require specific evidence (DNA testing) even if they believed the State had proven its entire case beyond a reasonable doubt. That question contained facts, and nothing additional, that if answered affirmatively would authorize a challenge for cause. Therefore, the question was not an improper commitment question.

## IV.  Improper Expert Witness Testimony

Acree argues that Burress was improperly allowed to testify about her opinion as to whether the child was telling the truth about the alleged assault. Citing *Duckett v. State*, Acree alleges such testimony was admitted in error. 797 S.W.2d 906 (Tex. Crim. App. 1990). Burress was asked, "After reviewing all of the materials in this case and talking to [S.O.], do you have an opinion as to whether or not she is the victim of a sexual offense?" Burress stated that the question was for the trier of fact, but she had not seen anything to cause her to question or disbelieve the initial outcry and information given to the nurse. No objection was made to this question or the testimony. The only

objection cited by Acree was made several pages earlier in the record when Burress was asked what the child ultimately told her.  Since no objection was made to this evidence, any objection to the testimony was forfeited and we cannot consider it on appeal.  TEX. R. APP. P. 33.1.  This issue is overruled.

We affirm the judgment of the trial court.

Jack Carter
Justice

Date Submitted:      June 12, 2008
Date Decided:        August 22, 2008

Do Not Publish