Christopher Ray JOHNSON, Appellant

v.

The STATE of Texas.

No. PD–0678–12.

Court of Criminal Appeals of Texas.

Oct. 10, 2012.

Thomas J. Lewis, Houston, for Appellant.

Melissa P. Hervey, Asst. Dist. Atty., Houston, Lisa C. McMinn, State's Atty., Austin, for State.

KELLER, P.J., filed a dissenting opinion in which KEASLER, J. joined.

Miriam Karr paid her rent by depositing a money order for $535 in the night drop at her apartment complex, but the apartment complex never received the payment. It was later determined that the money order had been "washed" so that the names of the payee and payor had been replaced. Karr's name as the payor had been replaced by "Shoust," while the payee apartment complex had been replaced with appellant's name. The $535 amount remained the same. Appellant cashed the money order about thirty-six hours after Karr had placed it in the drop box. Appellant had no relationship with Karr or the apartment complex. The police did not talk to appellant and made no effort to ascertain who Shoust was or whether such a person or entity existed.

An officer from the forgery division of the Houston police department testified that "night-drop fishing" was a common method of stealing rent payments. This practice referred to using double-sided tape or some other adhesive and a wire hanger or other pliable tool to pull money orders and checks back through the slot of the night drop. He also testified to "washing," which involved the use of chemicals to soften the ink on a money order or check so that a soft adhesive could be used to lift the ink from the paper, leaving the original writing largely undetectable.

Relying upon *Stuebgen v. State*[1] and *Crittenden v. State*,[2] the court of appeals held that the evidence was legally insufficient to show that appellant knew the money order was forged.[3] Both cases involved a purported payor who had a relationship with the defendant and from which the defendant might expect to receive a payment. In *Stuebgen*, the defendant cashed a check from his employer,[4] while *Crittenden* involved a check that purported to have been written by the defendant's personal injury attorney.[5]

In the present case, appellant and the victim were strangers. The court of appeals faulted the State because it did not attempt to locate or identify anyone named Shoust:[6] "The State has the burden of proof, and performed no investigation to

1. 547 S.W.2d 29 (Tex.Crim.App.1977).

2. 671 S.W.2d 527 (Tex.Crim.App.1984).

3. *Johnson v. State*, —— S.W.3d ——, —— ——, 2012 WL 1554155, at *3–5, 2012 Tex. App. LEXIS 3494, at 9–12 (Houston [14th Dist.] May 3, 2012).

4. 547 S.W.2d at 31.

5. 671 S.W.2d at 527–28.

6. *Johnson*, —— S.W.3d at ——, 2012 WL 1554155, at *1–2, 2012 Tex.App. LEXIS 3494, at 4.

determine if such a person existed and, if so, what relationship he or she had to appellant." [7] But the notation "Shoust" is at least somewhat suspect. Does it refer to a natural person or an entity such as a corporation or association? If it is supposed to refer to a natural person, then it is not in the usual format of containing both first and last names. If it is an entity, the name contains no description such as "company" or "inc" that would suggest such a status, and "Shoust" is not the name of a commonly recognized corporation or other entity. Add to this the fact that the money order was not a blank instrument that was allegedly filled out by a forger but was in fact a filled-out instrument in which the names of the payor and payee had been changed. And add to that the fact that the money order was stolen.

Our cases hold that a defendant's unexplained possession of property recently stolen in a burglary gives rise to an inference that he was in fact the burglar.[8] In this case, a burglary of the apartment complex occurred when someone "fished" the victim's money order from the night drop.[9] Appellant's possession of the money order thirty-six hours later is a sufficiently short time to be considered "recent," especially when one considers that the money order had been subjected to chemical processes in order to accomplish the forgery.

Finally, I would point out that the cases relied upon by the court of appeals are relatively old, having been decided before this Court abandoned the alternative-reasonable-hypothesis construct for reviewing the sufficiency of the evidence in circumstantial evidence cases.[10] Given the changes in our sufficiency-of-the-evidence jurisprudence and the distinctions that exist between this case and the cases relied upon by the court of appeals, we should grant review to clarify how to assess the sufficiency of the evidence in forgery cases.

Because the Court declines to do so, I respectfully dissent.

7. *Id.* at ——.

8. *Rollerson v. State*, 227 S.W.3d 718, 725 & n. 18 (Tex.Crim.App.2007).

9. *See Richardson v. State*, 888 S.W.2d 822, 824 (Tex.Crim.App.1994) ("Our burglary statutes are intended to protect the sanctity of private areas, be they habitations, buildings not open to the public, or vehicles.").

10. *See Geesa v. State*, 820 S.W.2d 154, 156–61 (Tex.Crim.App.1991) (abrogating the alternative-reasonable-hypothesis construct).