# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00341-CR

**Timothy Jerome Troupe, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 27TH JUDICIAL DISTRICT
### NO. 66904, HONORABLE MARTHA J. TRUDO, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found the appellant, Timothy Jerome Troupe, guilty of burglary of a habitation and sentenced him to ten years in prison. *See* Tex. Penal Code § 30.02(a) (burglary). The charge authorized the jury to convict Troupe of acting either alone or as a party to the offense. *See id.* §§ 7.01 (parties to offenses), .02 (criminal responsibility for conduct of another). Troupe contends in one issue on appeal that the evidence is insufficient to support the jury's verdict of guilt. We will affirm the conviction because we conclude that the evidence is sufficient to support the verdict.

## BACKGROUND

Joshua and Amber Gadlin, both active-duty members of the military, left their duplex on the morning of July 8, 2010, at about 5:45 a.m. to attend physical training (PT).[1] Amber hid the

---

[1] We will refer to the Gadlins by their first names for clarity.

spare key to their duplex in the mailbox. When the Gadlins were leaving their home, they noticed a person talking on a cell phone and seated on a picnic table closer to their neighbor's door.

Amber returned home from PT earlier than Joshua because she had a doctor's appointment that morning. When she arrived home at about 6:45 a.m., she found the front door wide open and the key that had been hidden in the mailbox in the door lock. She went inside and found that their television was missing and called the police because she realized that they had been burglarized. She then waited outside for the police and for Joshua to return home. After Joshua returned, they realized his cell phone and their laptop were also missing.

When Officer Plank arrived, Joshua gave him a description of the man that they had seen sitting on the picnic table when they left for PT. In addition, the Gadlins told Officer Plank that they had realized that they could track the location of Joshua's cell phone because both their cell phones had a family-locator application that enabled each of them to use GPS tracking to identify the location of the other's phone. Officer Plank looked at Amber's cell phone and realized that the other phone was within a mile of the Gadlins' home. The GPS did not show the other phone moving. Instead, it had to be updated, and each time it was updated, it showed the location to which the phone had moved within a radius of about 100 feet or less. Officer Plank asked the Gadlins to continue updating the phone's location and to begin driving toward it, and he followed. Based on the speed with which the phone's location changed, Officer Plank believed that the person with the missing phone was in a car. Officer Plank stated that the areas in which they were driving were high narcotic areas.

While they were driving, the Gadlins saw a red Honda and noticed that the driver of the vehicle was Troupe, whom they knew and had spoken to a few times because his girlfriend had

2

lived across the street from them. They knew him by the nickname "Tru." Amber could see that someone else was in the Honda with Troupe, but that person was slumped down in the passenger seat with his head down.

The Gadlins gave Amber's phone to Officer Plank when they were closer to the stolen phone's location, and Officer Plank tracked the missing phone to the parking lot of a nearby apartment complex. Officer Plank parked around the corner so that he would not be seen, and he began walking to the location of the GPS signal. He saw a man who matched the description of the man that the Gadlins had seen sitting on the picnic table outside their home earlier that morning. The Gadlins had followed Officer Plank. Amber identified the man and pointed out that he had on the same very distinctive shoes that she had noticed when he was sitting on the picnic table.

Officer Plank approached the man and determined that the man was Edward Jeffries. Jeffries had the Gadlins' missing cell phone in his pocket, so Officer Plank arrested him for burglary of a habitation. While Officer Plank was arresting Jeffries, Joshua saw Troupe peeking out of some nearby bushes at them. When Joshua pointed at him and said to Amber, "There's Tru," Troupe started running, even though no one was chasing him at that point. Amber began chasing him because she thought he must have had something to do with it, or he would not have started running away. Joshua alerted Officer Plank to Troupe's presence, saying, "There goes his partner right there," and Officer Plank saw Troupe, who was wearing a red shirt, running away. Joshua began following Troupe and Amber, and as soon as Officer Plank had Jeffries handcuffed, he alerted other officers that he needed assistance pursuing Troupe.

Troupe was running behind houses and jumping fences. At one point, Amber caught up to him, and Troupe said to her, "Ma'am, I didn't take anything. Ma'am, I didn't take anything."

3

But no one had told him that anything had been stolen at this point, so Amber asked him how he knew anything had been taken. He just kept repeating that he didn't take anything. Amber had grabbed him in a choke hold, but he wiggled out of it, and when he did, his shirt came off and he ran away again. After that, Joshua intercepted him, and then another police officer, Detective Joe Smith, arrived and handcuffed Troupe. Officer Plank had been following the chase in his patrol car. He could not run after Troupe because he was transporting Jeffries. At two different times, he yelled to Troupe, "Stop, police. You're under arrest," but never stated what crime he was going to arrest Troupe for. After Detective Smith apprehended Troupe, Officer Plank advised Troupe that he was placing him under arrest. Before Officer Plank told him the crime for which he was being arrested, Troupe stated, "I didn't break into no house." Officer Plank testified that he had not told the other responding officers what Troupe's offense was, so none of them could have told him why he was being arrested.

The red Honda that the Gadlins had seen Troupe driving earlier was in the parking lot of the apartment complex where Jeffries was arrested and where Troupe had been hiding in the bushes before he ran. The Gadlins identified the car to the police officers as the one that they had seen Troupe driving earlier. Also, Jeffries had previously told Officer Plank that he would find a red Honda at the apartment complex that would have some stolen property in it from the burglary. He had also talked to Officer Plank about Troupe's involvement in the burglary with him. When Officer Plank first advised Jeffries that he was under arrest for burglary of a habitation, Jeffries stated that he was addicted to crack and needed help, but that he did not break into "that house." After Troupe was spotted and had begun running away, Jeffries told Officer Plank while Officer Plank was putting him in the back of the patrol car that Troupe was the one who broke into the house.

4

When the police searched the red Honda, they found property belonging to the Gadlins in it, including a radio, a car stereo, the laptop, and some pieces of jewelry. The police determined that the Honda was registered to Jennifer Alexander. Alexander testified that Troupe, whom she knew through her brother, had been at her house on July 7 for a party for her brother. She left her house the evening of July 7 and did not return until early in the morning of July 8. She had loaned her car to Troupe that morning because he told her he needed to borrow it to get to work by 7:20 a.m. When the police came to her house, they told her that her car had been involved in a burglary of a habitation and that they had a report of some stolen property at her house. The Gadlins' television was found at her house, but Alexander denied knowing how it arrived at her house. She said she had not noticed it when she came in early on the morning of July 8 because some other people were in the process of moving into her home the night before, so she was not surprised to see items she did not recognize. She had seen Jeffries around the neighborhood, but did not know him. He had approached her in the past to panhandle and to tell her that he had merchandise for sale, but she never bought anything from him. She testified that she did not buy the television from him.

In Troupe's written statement to Detective Smith, Troupe indicated that he was walking to work and an individual in a military uniform approached him and started beating him up for no reason. He did not state that he knew the person or that his girlfriend lived across the street from the person. Jeffries later gave Detective Smith an oral statement in which Jeffries stated that he broke into the Gadlins' house first, but then left to get Troupe to help him with transportation and to get the property out of the house. Jeffries told Detective Smith that he and Troupe loaded the property into the car and discussed taking the property to sell it.

5

At trial, Jeffries testified to a different version of events. He testified that he had entered the Gadlins' home, removed the property and stored it behind the back of the vacant duplex next door. He then walked to an apartment where he knew some people and asked if they wanted to buy a television. A woman there bought it, and she asked Troupe to take Jeffries in her car to pick it up. Jeffries testified that he told Troupe that he had stolen the television. When they arrived at the Gadlins' house, Jeffries carried the television from behind the neighboring duplex to the car, and Troupe helped Jeffries put it in the car. After they took the television back to the woman, she bought it. Then Troupe took Jeffries to get something to eat and was taking him to a friend's apartment in the complex where the police found them.[2]

Troupe was indicted for the offense of burglary of a habitation. The charge authorized the jury to convict Troupe acting either alone or as a party to the offense. *See id.* §§ 7.01 (parties to offenses), .02 (criminal responsibility for conduct of another). The jury found Troupe guilty of the offense of burglary of a habitation, "as charged in the indictment."

## DISCUSSION

Due process requires the State to prove beyond a reasonable doubt every element of the crime charged. *Jackson v. Virginia*, 443 U.S. 307, 316 (1979); *see also Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (determining that *Jackson* standard "is the only standard that a reviewing court should apply" when examining sufficiency of evidence). When considering the sufficiency of the evidence, we view all the evidence in the light most favorable to

---

[2] By the time of Troupe's trial, Jeffries had judicially admitted to commission of the burglary.

the verdict to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 899. Under this standard, it is the factfinder's duty "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. When analyzing sufficiency, we then "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007).

We presume that the factfinder resolved any conflicting inferences supported by the record in favor of the prosecution and therefore defer to that determination. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We must defer to the jury's determination of the witnesses' credibility and the weight to be given their testimony. *Brooks*, 323 S.W.3d at 899. We assume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences from basic facts to ultimate facts in a manner that supports the verdict. *Jackson*, 443 U.S. at 319; *Laster v. State*, 275 S.W.3d 512, 522 (Tex. Crim. App. 2009). "Our role on appeal is restricted to guarding against the rare occurrence when a factfinder does not act rationally[;] . . . . we will uphold the verdict unless a rational factfinder must have had reasonable doubt as to any essential element." *Laster*, 275 S.W.3d at 517-18.

We apply the same standard of review to both direct and circumstantial evidence cases. *Id.* We must consider all the evidence in the record, whether direct or circumstantial, properly or improperly admitted, or submitted by the prosecution or defense. *Clayton*, 235 S.W.3d at 778. Circumstantial evidence is as probative as direct evidence when establishing an actor's guilt, and circumstantial evidence alone can be sufficient to establish guilt. *Hooper*, 214 S.W.3d at 13.

In a sufficiency review, the essential elements of the offense are those of a hypothetically correct jury charge for the case—one that accurately sets out the law and adequately describes the offense for which the defendant was tried without increasing the State's burden of proof or restricting the State's theories of liability. *Id.* at 14. To support a conviction for burglary of a habitation, the State must prove that a person entered a habitation without the effective consent of the owner in order to commit or attempt to commit a felony, theft, or assault. Tex. Penal Code § 30.02(a)(3). In this case, the charge authorized the jury to convict Troupe either as a principal or a party. When the trial court's charge authorizes the jury to convict on more than one theory, the verdict of guilt will be upheld if the evidence is sufficient on any of the theories. *See Hooper*, 214 S.W.3d at 14.

Viewing the evidence in the light most favorable to the verdict, we find that the evidence is sufficient to support Troupe's conviction for burglary of a habitation. The jury heard evidence of a number of circumstances from which it could infer Troupe's guilt. First, flight is a circumstance indicating guilt. *Hardesty v. State*, 656 S.W.2d 73, 77-78 (Tex. Crim. App. 1983). Troupe was hiding in the bushes and fled the scene when he was spotted. He led the Gadlins and police on a lengthy foot chase behind houses and jumped fences while trying to avoid police apprehension. After Amber had him in a choke hold, he escaped and ran away again. Second, the unexplained possession of recently stolen property permits an inference that Troupe is the person who committed the burglary. *See Rollerson v. State*, 227 S.W.3d 718, 725 (Tex. Crim. App. 2007). The Gadlins testified that the burglary occurred between 5:45 a.m. and 6:20 a.m. on July 8. Shortly after 8:00 a.m., Troupe was arrested. Troupe never offered any explanation for the stolen property

8

found in the back of the car that he had been seen driving just before his arrest. Third, inconsistent statements and implausible explanations to the police are probative of wrongful conduct and are also circumstances of guilt. *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004). Troupe repeatedly denied involvement in a burglary, first when he was apprehended by Amber and then by Officer Plank, before anyone accused him of the crime. At the time of his arrest, Troupe stated that he had been walking to work when a person in military uniform had attacked him without provocation, despite the fact that he and the Gadlins knew each other (which he omitted from his statement).

In sum, the State presented evidence that Troupe (1) was driving the car containing the stolen property shortly after the burglary, (2) fled from police when spotted, (3) denied involvement in a burglary before any accusation was made, and (4) asserted that he had been attacked without provocation by an unknown person in military uniform even though the Gadlins had met him before and knew him by name. We conclude that a rational jury could have found all the elements of burglary proved beyond a reasonable doubt based on the totality of the evidence. *See Guevara*, 152 S.W.3d at 52 (holding that rational jury could have found elements of offense proved beyond a reasonable doubt based on totality of circumstantial evidence).

In addition, two of Jeffries's statements further support the jury's verdict.[3] The State put on evidence that Jeffries had given two different versions of events to the police before testifying to a third version at trial. Officer Plank testified that Jeffries first told him that Troupe was the one

---

[3] The charge informed the jury that Jeffries was an accomplice and instructed the jury on the accomplice-testimony requirements. Troupe has not raised an issue on appeal related to the State's use of accomplice testimony.

9

who broke into the house. Detective Smith testified that shortly after his arrest Jeffries told him that he had left the Gadlins' house after entering it the first time to get Troupe to help him with transportation and getting the property from the house. He and Troupe then drove back to the house, loaded the property in the car, and discussed taking the property to sell it. At trial, Jeffries testified that Troupe helped him transport the property (that Jeffries told Troupe was stolen) after Troupe had been asked to drive Jeffries to get the television by the woman who bought it. Alexander testified that she did not know Jeffries, did not buy the television from him, and loaned her car to Troupe so that he could go to work. We must presume that the jury resolved the conflicting testimony in favor of its verdict and believed Jeffries's first or second version of events—that Troupe either broke into the house or helped Jeffries get the property out of the house. *See Jackson*, 443 U.S. at 319; *Laster*, 275 S.W.3d at 517. Even if we disregard Jeffries's statements, however, the totality of the other evidence is sufficient to support Troupe's conviction.[4]

The State offered sufficient circumstantial evidence for the jury to infer beyond a reasonable doubt that Troupe committed the burglary. Reviewing the evidence under the appropriate standard, we conclude the evidence is legally sufficient to support Troupe's conviction. We overrule Troupe's sole issue.

---

[4] Troupe relies on Jeffries's presence to argue that the evidence was insufficient to convict him as a party—he asserts that Jeffries's testimony at trial shows that they did not share a common purpose or design before or contemporaneously with the burglary. The mere presence of another party, however, does not preclude our evaluation of the circumstantial evidence that provides a sufficient basis standing alone to convict Troupe as a principal actor. We do not reach Troupe's argument that the evidence is insufficient to convict him as a party because we have concluded that the evidence is sufficient to convict Troupe as a principal actor. *See Hooper v. State*, 214 S.W.3d 9, 14 (Tex. Crim. App. 2007) (conviction will be upheld if sufficient evidence supports any one of alternative theories in jury charge); *see also* Tex. R. App. P. 47.1 (court of appeals must hand down written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of appeal).

10

**CONCLUSION**

Having determined that the evidence is sufficient to support Troupe's conviction, we affirm the trial court's judgment.

_____

David Puryear, Justice

Before Justices Puryear, Goodwin and Field

Affirmed

Filed:   July 18, 2013

Do Not Publish

11