**AFFIRMED; Opinion Filed July 10, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

**No. 05-12-01516-CR**

**No. 05-12-01517-CR**

**KELLY MACK LAMBETH, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 219th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause Nos. 219-80060-2012 and 219-80495-2012**

## MEMORANDUM OPINION

Before Justices FitzGerald, Lang, and Fillmore
Opinion by Justice Lang

This is an appeal from a bench trial. In two issues, seventy-six year old Kelly Mack Lambeth asserts the circumstantial evidence linking him to two burglaries of a habitation is insufficient to support his convictions. We affirm the trial court's judgments.

### I. PROCEDURAL AND FACTUAL CONTEXT

On October 12, 2011, Richard Sewell returned home from dinner with his wife to find an older gentleman, later identified as Lambeth, standing inside his house near the front door. Sewell asked Lambeth if he knew where he was, and Lambeth replied he was at his brother's house. Sewell informed him he was not and asked him to leave. When Lambeth left, Sewell noticed that the glass to the front door had been broken and realized Lambeth "was a burglar." Moments later, Sewell was hit in the face by another burglar and knocked to the ground.

Sewell's wife called 9-1-1, and Lambeth was arrested less than an hour later at a nearby bus stop. The following day, Lambeth was linked to the October 6, 2011 burglary of the house of Aaron Marlowe. Lambeth was charged with both burglaries, and the two offenses were tried together.

Testifying first, Marlowe stated that he and his family returned home from an activity to find the front door of their house open. Marlowe went to the door and, not seeing anyone outside, closed the door. He did not see any damage to the door, but as he walked through the house, he noticed drawers and the closet in his bedroom "had been rummaged through." He also noticed the door from the backyard to the garage had been "kicked in." Marlowe testified he kept the door from his garage to his house unlocked, and it appeared the burglar had entered his house through the garage. Marlowe reported the burglary to the police. Two watches were stolen, but were later recovered from a pawnshop about "eight to ten miles away." One watch had been pawned two days after the burglary, and the other watch was pawned four days after the burglary. Both watches were pawned by Lambeth.

Sewell testified about the burglary of his house and stated that while the "bedroom area" had been "messed up a little bit," he did not notice anything missing. He provided a description of Lambeth to the officers and subsequently identified Lambeth from a photographic line-up.

Plano detective Gary Griffin investigated both burglaries and interviewed Lambeth after the arrest. Griffin testified Lambeth told him "he was in Plano with a girl" and admitted he pawned the watches. Lambeth denied, though, that he was a burglar and refused to provide details about "the girl." Griffin testified no fingerprints were recovered at either house. The sole link to the burglary of Marlowe's house was the watches and the link to the burglary of Sewell's house was Lambeth's presence in the house while "a burglary [was] in progress." Griffin admitted he did not know how Lambeth got the watches, whether Lambeth entered Sewell's

home at the same time as the second burglar, or whether Lambeth "rummaged through" Sewell's house.

Testifying in his defense, Lambeth admitted he had previous convictions for murder, aggravated robbery, and burglary. He testified he generally "h[u]ng out" in East Dallas and was in Plano for the first time on October 12, 2011. He denied any connection to the burglary of Marlowe's house and explained he pawned the watches for a "guy" in exchange for money. Lambeth explained further that he did "odd jobs for money" because he had health issues, was "crippled," and had no income. As for the burglary of Sewell's home, Lambeth testified he met "this woman" at a bar and went with her to her house in Plano. A man at her house later offered to give Lambeth a ride back to East Dallas. According to Lambeth, before leaving the woman's house, the man grabbed a crowbar. Then, he drove to another neighborhood and stopped at a house to "get some things." Lambeth stayed in the car while the man went inside the house. After about forty minutes of waiting, Lambeth went to the house. Finding the door to the house open, he went inside. At that same time, Sewell was arriving home. When Sewell asked him if he knew where he was, Lambeth replied that he was at a friend's house. Asked how he entered, Lambeth replied he walked in the front door. Lambeth testified that he realized at the moment Sewell asked him how he entered that "something bad was going on," and he decided to leave and go to the bus stop. Lambeth admitted his story was "kind of hard to believe," but stated "it's all I got is the truth." He also testified that, given his background, if he had realized "the details of what was happening" at Sewell's house, he "wouldn't [have been] standing out there on a main thoroughfare, a bus stop." On cross-examination, Lambeth admitted that at the time of his arrest, he had a stun gun and switchblade.

Concluding the evidence was sufficient in each case, the trial court found Lambeth guilty, and following punishment testimony, assessed concurrent five year sentences.

## II.    SUFFICIENCY OF EVIDENCE

Lambeth's first issue assails the legal and factual sufficiency of the evidence supporting his conviction for the burglary of Marlowe's house.  Specifically, Lambeth contends the evidence that he pawned Marlowe's watches within a few days of the watches being stolen, the only evidence linking him to the burglary of Marlowe's house, is legally and factually insufficient to support the conviction for that burglary.  In his second issue, Lambeth contends the evidence that he was standing in Sewell's house while "a burglary [was] in progress" is factually insufficient to support the conviction for the burglary of Sewell's house.

### A. Standard of Review

In *Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010), the Texas Court of Criminal Appeals abolished the factual sufficiency standard of review, concluding no "meaningful distinction" existed between that standard and the legal sufficiency standard.  *Howard v. State*, 333 S.W.3d 137, 138 n.2 (Tex. Crim. App. 2011); *Brooks*, 323 S.W.3d at 895.  Rather than employ separate legal and factual sufficiency standards when reviewing sufficiency complaints in criminal cases, appellate courts now employ only the legal sufficiency standard.  *Brooks*, 323 S.W.3d at 895. Under that standard, the reviewing court considers the evidence in the light most favorable to the verdict to determine whether, based on that evidence and reasonable inferences from that evidence, a rational fact finder could have found the essential elements of the offense beyond a reasonable doubt.  *Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011). Direct and circumstantial evidence are treated equally, and circumstantial evidence alone can be sufficient to establish guilt.  *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).  Because the fact finder is the sole judge of the witnesses' credibility and the weight to be given the evidence, the reviewing court defers to the trier of fact's resolution of any conflicts in testimony,

weight of the evidence, and inferences drawn. *See Brooks*, 323 S.W.3d at 899; *Hooper*, 214 S.W.3d at 13 (quoting *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)).

*B. Applicable Law*

Based on the indictment, to establish Lambeth burglarized Marlowe's house, the State had to prove beyond a reasonable doubt that Lambeth entered Marlowe's house without Marlowe's consent and committed or attempted to commit theft. *See* TEX. PENAL CODE ANN. § 30.02(a)(3) (West 2011). The State could prove the offense through direct or circumstantial evidence, including evidence that Lambeth was in possession of property recently stolen in a burglary, pawned the property, and, at the time of his arrest, failed to reasonably explain his acquisition of the property. *See Rollerson v. State*, 227 S.W.3d 718, 725 (Tex. Crim. App. 2007); *Hardesty v. State*, 656 S.W.2d 73, 76 (Tex. Crim. App. 1983); *Poncio v. State*, 185 S.W.3d 904, 905 (Tex. Crim. App. 2006); *Jones v. State*, 458 S.W.2d 89, 91 (Tex. Crim. App. 1970).

To establish Lambeth burglarized Sewell's house, the State had to prove beyond a reasonable doubt that Lambeth entered Sewell's house without Sewell's consent and with the intent to commit theft. *Id.* § 30.02(a)(1). As regarding the charge of burglarizing Sewell's house, the State could prove intent to commit theft through direct or circumstantial evidence. *See Lewis v. State*, 715 S.W.2d 655, 657 (Tex. Crim. App. 1986).

*C. Application of Law to Facts*

Lambeth argues in his first issue that, without evidence "put[ting him] at the address where the theft of the watches occurred" or fingerprint or other identifying evidence, the evidence that he pawned Marlowe's watches within a few days of the watches being stolen "falls far short of beyond a reasonable doubt for a conviction for burglary of a habitation," particularly in light of his testimony that he pawned the watches for someone else. In making this argument,

however, Lambeth ignores the well-settled principles that the State was not required to present direct evidence and, the trial court, as the sole judge of the witnesses' credibility, was free to disregard his testimony. *See Brooks*, 323 S.W.3d at 899; *Hooper*, 214 S.W.3d at 13; *Jones*, 458 S.W.2d at 91. Moreover, Lambeth did not offer as an explanation that he pawned the watches for someone else until trial. When questioned regarding the watches following his arrest, Lambeth denied he was a burglar, but offered no explanation for why he possessed the watches. From Lambeth's failure to reasonably explain at the time of his arrest how he got the watches, the trial court could have reasonably inferred Lambeth's guilt. *See Hardesty*, 656 S.W.2d at 76. Viewed in the light most favorable to the verdict, we conclude the evidence that Lambeth failed to explain his possession of the watches, coupled with evidence that he pawned the watches within days of the burglary, was legally sufficient to support the conviction for burglary of Marlowe's house. *See Poncio*, 185 S.W.3d at 905; *see also Middleton v. State*, 187 S.W.3d 134, 139 (Tex. App.---Texarkana 2006, no pet.) (evidence appellant pawned property stolen during burglary three days after burglary sufficient to support conviction for burglary of habitation). We resolve Lambeth's first issue against him.

We also resolve Lambeth's second issue against him. In arguing in this issue that his presence alone in Sewell's house while "a burglary [was] in progress" is insufficient, Lambeth relies on his testimony that he entered Sewell's house to look for the man who was driving him back to East Dallas and left as soon as he realized it was Sewell's house. He further relies on the lack of evidence that he ran from Sewell's house and that he was in possession of any stolen property. Again, as we stated above, the State was not required to present direct evidence, and the trial court was free to disregard Lambeth's testimony. *See Brooks*, 323 S.W.3d 899; *Hooper*, 214 S.W.3d at 13; *Lewis*, 715 S.W.2d at 657. Moreover, although Lambeth may not have run from the house, he left as soon as he was discovered and other evidence from which Lambeth's

guilt could be established was also presented. That evidence included evidence that the front door had been broken, another burglar was inside the house and hit Sewell as he fled from the house, the "bedroom area" had been "messed up a little bit," Lambeth was arrested close to Sewell's house, Lambeth was unemployed and relied on "odd jobs," and, Lambeth had a stun gun and switchblade at the time of his arrest. Viewed in the light most favorable to the verdict, we conclude legally sufficient evidence supports the conviction for the burglary of Sewell's house. *See*, *e.g.*, *Gear v. State*, 340 S.W.3d 743, 748 & n. 9 (Tex. Crim. App. 2011) (evidence of flight upon interruption by complainant and implausible and inconsistent explanation for appellant's conduct sufficient to show intent to commit theft); *Stearn v. State*, 571 S.W.2d 177, 178 (Tex. Crim. App. [Panel Op.] 1978) (evidence sufficient to support burglary of habitation where appellant found in kitchen of residence, nothing had been disturbed other than what was necessary to break in, and appellant fled when discovered).

### III. CONCLUSION

Having resolved Lambeth's issues against him, we affirm the trial court's judgments.

/Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
121516F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

KELLY MACK LAMBETH, Appellant

No. 05-12-01516-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 219th Judicial District Court, Collin County, Texas
Trial Court Cause No. 219-80060-2012.
Opinion delivered by Justice Lang.  Justices FitzGerald and Fillmore participating.

Based on the Court's opinion of this date, we **AFFIRM** the trial court's judgment.


Judgment entered this 10th day of July, 2014.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

KELLY MACK LAMBETH, Appellant

No. 05-12-01517-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 219th Judicial District Court, Collin County, Texas
Trial Court Cause No. 219-80495-2012.
Opinion delivered by Justice Lang.   Justices FitzGerald and Fillmore participating.

Based on the Court's opinion of this date, we **AFFIRM** the trial court's judgment.

Judgment entered this 10th day of July, 2014.