**Affirmed and Opinion Filed November 16, 2022**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-21-01045-CR

**ANTONIO PEACOCK, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 354th District Court**
**Hunt County, Texas**
**Trial Court Cause No. 33426CR**

## MEMORANDUM OPINION

Before Chief Justice Burns, Justice Nowell, and Justice Smith
Opinion by Justice Nowell

A jury convicted appellant Antonio Peacock of possession with intent to deliver a controlled substance of two hundred grams or more but less than four hundred grams and sentenced him to forty years' confinement. In a single issue, appellant challenges the sufficiency of the evidence to support his conviction because the evidence fails to "affirmatively link" him to the methamphetamine. We disagree and affirm appellant's conviction.

## Background

On March 11, 2020, Deputy Andy Williams, while conducting traffic stops on Interstate 30 in Hunt County, Texas, observed a vehicle traveling in the left-hand passing only lane. When the vehicle did not move over, Deputy Williams conducted a traffic stop. He approached the passenger side, introduced himself, and requested the driver's license. The driver identified himself as Jeremy Herd.

Deputy Williams asked Herd about his itinerary for the day. Herd explained he drove to Baylor Hospital in Dallas because his sister was having a baby. During Deputy Williams' interactions with Herd, he observed Herd acting "extremely nervous, making furtive movements with his hands, not making eye contact." Herd also was smoking a freshly lit cigarette, which Deputy Williams explained was often used to cover up the smell of narcotics.

Appellant owned the car and was sitting in the front passenger seat. When Deputy Williams asked appellant about their earlier whereabouts, he said they traveled to Arlington to visit a few friends. He never mentioned going to a hospital. Appellant also acted nervously, avoided eye contact, and made furtive gestures with his hands.

Based on their behaviors and conflicting travel itineraries, Deputy Williams suspected criminal activity. He asked for consent to search the vehicle, but both men denied it. Deputy Williams then requested a K-9 dog perform an open-air sniff of

–2–

the vehicle. Officer Cleve Williams responded with his K-9 dog, Kilo. Kilo was trained to detect marijuana, cocaine, methamphetamine, heroin, and ecstasy. Kilo "alerted" on the vehicle, meaning he detected drugs.

Kilo's alert provided probable cause for Deputy Williams to search the vehicle. During the search, Deputy Williams located a black "grocery-style bag" tied at the top underneath the front passenger seat. The bag contained a large Ziploc-style bag with a crystalline substance. Based on his training and experience, Deputy Williams believed it was methamphetamine. Subsequent lab testing confirmed the substance was methamphetamine, and the total weight recovered was approximately 242 grams, an amount well beyond personal use. Deputy Williams also found over $3,000 in cash in Herd's possession and approximately $50 in cash in appellant's possession.

Deputy Williams seized both men's cell phones because based on his training and experience, people involved in the sale and/or distribution of drugs often used cell phones to further their drug activities. Detective Russell Stillwagoner made a forensic copy of appellant's cellphone and extracted all its data. Text messages revealed appellant's communications with individuals interested in buying marijuana. Besides marijuana, one contact texted appellant, "The meth is for a buddy of mine. I should have told you earlier. Sorry." Appellant responded, "Ok. Come on."

Appellant testified in his own defense. He said he first met Herd at a gas station approximately two weeks before their arrest. On the day in question, Herd asked for a ride to Arlington to see some family members. Appellant trusted Herd and agreed to let Herd drive his car. Herd paid him $50 for gas and food. They stopped somewhere in Arlington at a "chicken place" where Herd met his cousin. Herd then followed his cousin to a house down the street. Appellant fell asleep and woke up when Herd returned to the car. Appellant fell asleep again on the drive back to Texarkana and woke up to police sirens.

Appellant admitted selling marijuana for about three months prior to the arrest but denied selling methamphetamine or knowing anything about the methamphetamine in the car. He explained that when he woke up to the sirens, he saw Herd's hand behind the passenger seat and he heard a bag. He did not know what was in the bag or where Herd stored it before moving it to the back seat. He admitted smoking marijuana in the car prior to the stop. He explained he denied consent to search his vehicle because he had a small quantity of marijuana in his possession, which officers later found during a search of his person at the jail.

Despite appellant's testimony, the jury convicted him as charged in the indictment. This appeal followed.

### Standard of Review and Applicable Law

In reviewing a legal sufficiency challenge, we examine the evidence to determine whether any rational trier of fact could have found the essential elements

–4–

of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We review all the evidence in the light most favorable to the verdict and assume the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences supporting the verdict. *See Rollerson v. State*, 227 S.W.3d 718, 724 (Tex. Crim. App. 2007). The factfinder is the sole judge of witness credibility and the weight to be given their testimony. *See Martin v. State*, 635 S.W.3d 672, 679 (Tex. Crim. App. 2021). The evidence is legally sufficient if it would enable reasonable and fair-minded people to reach the decision under review. *See Brooks v. State*, 323 S.W.3d 893, 922 (Tex. Crim. App. 2010).

Appellant was charged with possession with intent to deliver methamphetamine. To prove the requisite intent, the State was required to prove appellant exercised control, management, or care over the substance in question and knew the substance was contraband. *Tate v. State*, 500 S.W.3d 410, 413 (Tex. Crim. App. 2016). Regardless of whether this evidence is direct or circumstantial, it must establish that a defendant's connection to the contraband was more than fortuitous. *Blackman v. State*, 350 S.W.3d 588, 594 (Tex. Crim. App. 2011). Mere presence at the location where drugs are found is insufficient, by itself, to establish the requisite degree of control to support a conviction. *Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006). That said, possession need not be exclusive. *Henry v. State*, 409 S.W.3d 37, 42 (Tex. App.—Houston [1st Dist.] 2013, no pet.). Where, as here, appellant was not in exclusive possession of the place where the methamphetamine

–5–

was found, there must be additional independent facts and circumstances linking him to the contraband. *Tate*, 500 S.W.3d at 413–14.

The following is a non-exclusive list of possible "affirmative links" Texas courts have recognized as sufficient, either singly or in combination, to establish a defendant's possession of contraband: (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt. *Evans*, 202 S.W.3d at 162 n.12 (referred to as the *Evans* factors).

Intent to deliver may be proved by circumstantial evidence, such as the quantity of drugs possessed, the manner of packaging, whether the defendant possessed a large amount of cash, evidence of drug transactions, and the nature of the location where the defendant was arrested. *Taylor v. State*, 106 S.W.3d 827, 831

(Tex. App.—Dallas 2003, no pet.). Intent to deliver is a question of fact for the jury to resolve, and it may be inferred from the defendant's acts, words, or conduct. *Id*.

Even in the absence of direct evidence, we must view the circumstantial evidence in a light most favorable to the verdict and defer to the jury's responsibility to draw reasonable inferences from the evidence. *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017). Although the *Evans*' factors guide our analysis, no single factor is dispositive because our ultimate inquiry is whether the jury was rationally justified in finding appellant guilty based on the combined and cumulative force of the evidence and reasonable inferences therefrom. *See Tate*, 500 S.W.3d at 414.

## Discussion

On appeal, appellant argues the evidence is insufficient because (1) there was no evidence he touched, handled, moved, hid the bag, or directed Herd to hide the bag of methamphetamine; (2) there was no evidence he knew the bag contained narcotics; (3) he was not in exclusive possession of the location where officers found the methamphetamine, and his mere presence did not make him a party to knowingly possessing the drugs; and (4) there was no evidence indicating his guilty conscious.

While appellant's mere presence in the car where Deputy Williams found the drugs was insufficient, by itself, to establish the requisite degree of control to support a conviction, possession need not be exclusive. *See Evans*, 202 S.W.3d at 162; *Henry*, 409 S.W.3d at 42. Considering the other *Evans* factors, we conclude the jury

was rationally justified in finding appellant guilty based on the combined and cumulative force of the evidence and reasonable inferences therefrom. *See Tate*, 500 S.W.3d at 414.

Appellant was present in the car, which he owned, when Deputy Williams searched the car. Deputy Williams found the bag of methamphetamine under the passenger seat in close proximity to appellant and easily accessible to him. Although there is no specific evidence appellant was under the influence of marijuana when arrested, appellant admitted to using it earlier in the day. Further, marijuana was found in his possession during a later search at the jail. Deputy Williams also explained to the jury Herd was smoking a freshly lit cigarette, which based on his training and experience indicated Herd was trying to cover the smell of narcotics.

The jury could also consider Herd and appellant's conflicting stories regarding why they traveled to the metroplex as signifying a guilty conscious. Further, appellant never denied culpability at the time of the stop, but instead said he "only rode" and asked if he was going to jail. The jury watched a video of the arrest in which they observed appellant's behavior and gestures. Accordingly, the State presented sufficient "affirmative links" to establish appellant exercised actual care, custody, control, or management over his vehicle and its contents, including the methamphetamine. *See Evans*, 202 S.W.3d at 162.

In addition, based on the large quantity of methamphetamine found in appellant's vehicle and evidence of routine drug transactions found on the text

–8–

messages extracted from his cell phone, a rational jury could have inferred appellant intended to sell the methamphetamine in his possession.

The jury, acting as the sole judge of witness credibility, rejected the evidence appellant relies on to attack the sufficiency of his conviction. This included, among other things, his self-serving testimony denying knowledge of the drugs and evidence of Herd asking Deputy Williams whether he would let appellant go if he took responsibility for the drugs. "An appellate court cannot act as a thirteenth juror and make its own assessment of the evidence." *Nisbett v. State*, 552 S.W.3d 244, 262 (Tex. Crim. App. 2018). Instead, we must defer to the jury and assume it resolved any conflicts in the testimony. *See Rollerson*, 227 S.W.3d at 724. *Id.* We conclude the evidence, when viewed in the light most favorable to the verdict, supports appellant's conviction. We overrule appellant's sole issue.

## Conclusion

Because the evidence is legally sufficient to establish beyond a reasonable doubt that appellant possessed methamphetamine with intent to deliver and distribute, we affirm his conviction.


/Erin A. Nowell//
_____
211045f.u05                    ERIN A. NOWELL
Do Not Publish                 JUSTICE
TEX. R. APP. P. 47.2(b)



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

ANTONIO PEACOCK, Appellant

No. 05-21-01045-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 354th District Court, Hunt County, Texas
Trial Court Cause No. 33426CR.
Opinion delivered by Justice Nowell. Chief Justice Burns and Justice Smith participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 16th day of November, 2022.